IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SEAGATE TECHNOLOGY (US)
HOLDINGS, INC.,

   Plaintiff;

v.

SYNTELLECT, INC., F/K/A/ APROPOS
TECHNOLOGY, INC and ENGHOUSE
INTERACTIVE INC.,

   Defendants.

Civil Action No. 12-1686-RGA

## MEMORANDUM OPINION

Karen Jacobs, Esq., Michael J. Flynn, Esq., Morris, Nichols, Arsht &Tunnell LLP, Wilmington, DE; Vera M. Elson, Esq. (argued), Anthony J Weibell, Esq., Wilson Sonsini Goodrich & Rosati, P.C., Palo Alto, CA; Kate P. Mahaffy, Esq., Wilson Sonsini Goodrich & Rosati, P.C., Washington, D.C., attorneys for Plaintiff Seagate Technology (US) Holdings Inc.

Lauren E. Maguire, Esq., Ashby & Geddes, Wilmington, DE; Douglas C. Northup, Esq., Andrea L. Marconi, Esq., Courtney R. Beller, Esq. (argued), Fennemore Craig, P.C., Phoenix, AZ; Brian Hawkins, Esq., Fennemore Craig, P.C., Denver, CO, attorneys for Defendant Enghouse Interactive Inc.

September 22, 2015

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court are cross motions for summary judgment. (D.I. 60, 61). Defendant Enghouse Interactive Inc. moved for summary judgment of non-liability. (D.I. 60). Plaintiff Seagate Technology (US) Holdings, Inc. moved for summary judgment of liability and on Defendant's affirmative defenses of apportionment and comparative fault. (D.I. 61). The matter has been fully briefed. (D.I. 62, 66, 74, 80). The Court heard oral argument on June 4, 2015. (D.I. 84). For the reasons set forth herein, Defendant's motion is **DENIED**. Plaintiff's motion is **GRANTED**.

## BACKGROUND

In 2004, Seagate entered into a software license agreement and maintenance service agreement with Apropos Technology Inc., Enghouse's predecessor-in-interest.[1] (D.I. 66 at p. 2). In 2009, Seagate and Enghouse entered into an Assignment and Modification Agreement. (D.I. 63-1). These license agreements gave Seagate the right to use Enghouse software designed to facilitate live chat services. (D.I. 62 at p. 1). The agreements included indemnification provisions, which are discussed more fully below.

On December 11, 2012, Pragmatus Telecom, LLC filed a patent infringement action against Seagate. (D.I. 1). Pragmatus alleged that Seagate infringed three of its patents by "provid[ing] live chat services over the Internet." (*Id.* at 2-3). In particular, Pragmatus accused "all live chat and live help products and services made, used or sold from 2006 to the present, including, but not limited to, those supplied by Syn[t]ellect/Enghouse." (D.I. 63-4 at 34). In February and March of 2013, Seagate requested that Enghouse defend and indemnify Seagate

---

[1] Enghouse (formerly known as Syntellect, Inc.) acquired Apropos in 2005. (D.I. 62 at p. 1, D.I. 66 at p. 4 n.4). Though listed as separate parties in the complaint, Syntellect and Enghouse are not separate entities. (D.I. 27 at p. 2). For the sake of clarity, I will refer to Enghouse, Syntellect and Apropos as "Enghouse" or "Defendant."

1

against the Pragmatus lawsuit. (D.I. 62 at p. 9). Enghouse declined. (*Id.*). On August 6, 2013, Seagate filed the instant breach of contract action against Enghouse. (D.I. 23).

In August 2014, Seagate and Pragmatus settled their lawsuit. (D.I. 62 at p. 10).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

2

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

In this case, the parties agree that the Court should determine Enghouse's contractual liability on summary judgment as a matter of law. (D.I. 62 at p. 10). The parties agree that California law governs the interpretation of the contracts at issue. (*Id.*).

## ANALYSIS

### A. Indemnification Provisions

"The question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control." *St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co.*, 124 Cal. Rptr. 2d 818, 825 (2002). There are three related contracts at issue. The Software License Agreement ("SLA") and Maintenance and Support Services Agreement ("MSSA") were executed together in 2004.[2] (D.I. 62 at p. 5). The agreements were renewed and modified by the 2009 Assignment and Modification Agreement ("AMA"). (*Id.*).

The AMA provides:

> This Assignment assigns, modifies and supersedes, to the extent of any inconsistencies, the provisions of the Software License, the MSSA, and the PSA, as well as any invoices

---

[2] A third agreement was also executed at the same time, but it is irrelevant for present purposes.

3

performed under these agreements (collectively where appropriate the "Three Agreements").... In the event of a conflict between agreements, the governing terms are taken from, in order of priority, (1) this Amendment; (2) the Software License; (3) the MSSA; and the [sic] (4) the PSA.

(D.I. 63-1 at 3). The AMA explains the scope of the underlying agreements. It states that the SLA "defines the terms under which software is licensed by Seagate from [Enghouse]." (*Id.*). The AMA further states that the MSSA "defines the terms and conditions for maintenance and support for software licensed by Seagate from [Enghouse]." (*Id.*).

The SLA grants Seagate a license to use Enghouse's live chat software. (*Id.* at 11). The SLA includes the following indemnification provisions:

> **8.1. General Indemnification.** Supplier will defend and indemnify Seagate, its parents, subsidiaries and Affiliates, and its and their respective directors, officers, partners, employees, agents, successors and assigns ("Indemnified Parties") against any claims, demands, lawsuits, damages, liabilities, judgments and settlements of every kind, including reasonable attorney fees that arise out of, relate to, or result from (a) injuries (including death) to persons or damage to property, including theft, resulting from the acts or omissions of Supplier or those persons furnished by Supplier, including its subcontractors (if any); or (b) Supplier's breach of any warranties set forth in Section 7.
>
> **8.2. Infringement Indemnity.** Supplier will defend and indemnify and hold harmless the Indemnified Parties against any loss, damage, expense, cost (including, but not limited to, any attorney fees incurred in the enforcement of this indemnity) or liability arising out of, relating to, or resulting from a claim alleging that the Software or the related services infringe the intellectual property of a third party, including but not limited to infringement of copyright or patent right, or misappropriation of trade secrets (collectively, "IP Claim").

(D.I. 63-1 at 15).

The MSSA contains a separate warranty and indemnification provision:

> **4. Warranty 4.1.** Supplier represents and warrants that the Support and Maintenance Services will be performed in a fully workmanlike manner and will not infringe on the intellectual property rights of any third party (including but not limited to copyright or patent infringement, or trade secret misappropriation). Supplier agrees to indemnify, hold harmless, and defend Seagate (including its directors, members, officers, employees, agents and other representatives) from all third party claims brought against Seagate (including paying the defense costs and reasonable attorneys' fees, judgments and other

4

expenses or liabilities) arising out of, resulting from, or relating to Supplier's breach of
the warranties set forth in this Section 4. Notwithstanding anything herein to the
contrary, Supplier shall have no liability to Customer if the claim is based upon: (a) the
combination of the Software with any product not furnished by Supplier; (b) the
modification of the Software by a party other than Supplier; (c) the use of other than a
current, unaltered release of the Software; (d) the use of the Software as part of an
infringing process.

(D.I. 63-2 at 12).

## B. Liability

Plaintiff argues that, under California law, when a supplier agrees to defend and indemnify a customer for damages "arising out of" or "resulting from" allegations that its product infringes, the supplier's liability is triggered by any infringement allegations "causally related in some manner to" the customer's use of the product. (D.I. 62 at p. 11 (quoting *S. California Gas Co. v. Syntellect, Inc.*, 534 F. App'x 637, 638-39 (9th Cir. 2013) ("*SoCal II*"))).[3] Plaintiff maintains that Enghouse agreed to defend and indemnify Seagate against "any claims" "of every kind" that "arise out of, relate to, or result from" allegations that Seagate's use of the licensed product infringes a third party's patent. (*Id.* at p. 14). Plaintiff argues that the infringement allegations were causally related to its use of the live chat software because the live chat system Pragmatus accused of infringement is enabled by the licensed software. (*Id.* at p. 15).

Plaintiff further argues that the combination exclusion in the MSSA applies only to maintenance and support services. (D.I. 74 at p. 14). Plaintiffs note that the AMA, which

---

[3] Plaintiff argues that a series of four decisions regarding similar claims against Enghouse (then Syntellect) are issue preclusive. *See S. California Gas Co. v. Syntellect, Inc.*, 2011 WL 1168444 (S.D. Cal. Mar. 28, 2011) ("*SoCal I*") (finding that Syntellect breached its obligation to defend and indemnify licensee); *SoCal II*, 534 F. App'x 637 (affirming grant of partial summary judgment against Syntellect); *S. California Gas Co. v. Syntellect, Inc.*, 2014 WL 334462 (S.D. Cal. Jan. 28, 2014) ("*SoCal III*") (finding that apportionment of damages was not warranted); *S. California Gas Co. v. Syntellect, Inc.*, 593 F. App'x 732 (9th Cir. 2015) ("*SoCal IV*") (affirming denial of apportionment). I do not agree that issue preclusion applies. Though similar, the indemnification provisions in *SoCal* were not the same as those at issue. The cases are persuasive, but they are not preclusive.

5

modifies and supersedes the previous contracts, specifies that the SLA governs licensing terms and the MSSA governs support and maintenance terms. (*Id.*). Plaintiff maintains that Defendant's interpretation of the contracts would render all defense and indemnity provisions null and void because the software is always used on a computer. (*Id.* at p. 18). Enghouse provided specifications regarding which hardware to use and how to set up the system, and there is no dispute that Seagate complied with those specifications. (D.I. 84 at 28).

Defendant responds that Pragmatus accused Seagate's entire live chat system, not the live chat software itself. (D.I. 66 at p. 9). Defendant maintains that the combination exclusion in the MSSA applies to the entire licensing arrangement and precludes Pragmatus's infringement allegations against the live chat system from triggering Enghouse's indemnity obligation. (*Id.* at p. 16). The MSSA provides: "Notwithstanding anything herein to the contrary, Supplier shall have no liability to Customer if the claim is based upon: (a) the combination of the Software with any product not furnished by Supplier . . . ." (D.I. 63-2 at 12). Defendant notes that the SLA defines "Software" as "the computer programs and applications available under this agreement . . . ." (D.I. 66 at p. 17). Thus, Defendant contends that the combination exclusion applies to all "Software" under the terms of the MSSA. (*Id.*). Because Seagate used the software in combination with other products, such as a computer to run the software, Defendant argues that the combination exclusion applies. (*Id.* at pp. 17-18).

Defendant further argues that, even if the combination exclusion does not apply, Enghouse's defense and indemnity obligations were not triggered because there was never an allegation that the software infringed. (D.I. 84 at 51-52). Rather, Pragmatus accused the entire live chat system, of which the software is just one part. (*Id.*).

6

I do not agree that the combination exclusion in the MSSA applies. The plain language of the MSSA's indemnity clause makes clear that it applies to any claim "arising out of, resulting from, or relating to Supplier's breach of the warranties set forth in this Section 4." (D.I. 63-2 at 12). Pragmatus's infringement allegations had nothing to do with support and maintenance or anything discussed in § 4 of the MSSA. In addition, I do not think that a rational drafter who intended the combination exclusion to apply to the entire scope of the licensing arrangement would include it only in the narrower support and maintenance agreement and not the license agreement itself. Redlines of the SLA as it was being negotiated show that Enghouse proposed including a combination exclusion in the SLA, but the language was not ultimately included. (D.I. 63-3 at 39). The AMA, which takes priority over the earlier agreements, makes clear that the MSSA governs support and maintenance services and the SLA governs licensing.

California courts have given a "consistently broad interpretation . . . to phrases such as 'arising out of' or 'arising from' and 'resulting from.'" *St. Paul Fire*, 124 Cal. Rptr. 2d at 826. "Liability will attach if the indemnitor's performance under the contract is 'causally related in some manner to the injury for which indemnity is claimed.'" *SoCal II*, 534 Fed. App'x at 638 (quoting *St. Paul Fire*, 124 Cal. Rptr. 2d at 828). Defendant's contention that the lawsuit did not result from its product because the entire live chat system, not the software alone, was accused is unavailing. The SLA granted a license to "use, execute, perform, display and reproduce the Software . . . ." (D.I. 63-1 at 11). The software cannot be used or executed without a computer. The complaint clearly arises from Seagate's use of the software even though other elements of the live chat system were also accused.

Enghouse has unsuccessfully pressed similar arguments in the past. For example, in *Branch Banking & Trust Co. v. Syntellect, Inc.*, the court reasoned that even though the entire

7

call system was accused rather than just the software, "the court has little difficulty concluding that [the] complaint claimed that the software infringed a United States patent." 2010 WL 2947772, *6 (M.D. Ala. July 22, 2010).[4] There, as here, the Enghouse software enabled the system, even though other elements were included in the system. (*Id.*). "Only on the most illogical reading of the complaint could the court conclude that it did not claim the software infringes a patent." (*Id.*). Similarly, in *SoCal*, the court held, "Syntellect clearly provided the computer software to automate the various aspects of Southern California Gas's telephone customer service operations, and clearly that software is causally related to the patent infringement alleged . . . ." *SoCal I*, 2011 WL 1168444, at *3.

The Pragmatus lawsuit triggered Enghouse's obligation to defend and indemnify Seagate. By refusing to do so, Enghouse breached the contract. I will therefore grant summary judgment of liability to Plaintiff.

## C. Apportionment

Plaintiff argues that Enghouse is liable for all recoverable damages, and there should thus be no apportionment. (D.I. 62 at p. 17). Plaintiff maintains that the court in *SoCal III* held that there is no right to apportionment absent an express provision in the parties' contract. (*Id.*). Plaintiff contends that there is no such limitation of indemnity in the contract at issue. (*Id.*). Rather, Plaintiff argues that the SLA makes Enghouse liable for "any loss, damage, expense, cost (including, but not limited to, any attorney fees incurred in the enforcement of this indemnity) or liability arising out of, relating to, or resulting from" a covered claim. (*Id.* at pp. 17-18 (quoting D.I. 63-1 at 15)).

---

[4] The court in *Branch* applied Arizona law, but "the pertinent similarities make the opinion persuasive." *SoCal I*, 2011 WL 1168444, at *4.

8

Defendant responds that California law requires apportionment. (D.I. 66 at p. 25). Defendant argues that *Peter Culley & Associates v. Superior Court*, 13 Cal. Rptr. 2d 624 (1992), and *Heppler v. J.M. Peters Co.*, 87 Cal. Rptr. 2d 497 (1999), "establish that, if an indemnitee settles with the plaintiff in the underlying lawsuit, the indemnitee has a legal duty to prove the proper apportionment of the settlement, if any, to the indemnitor." (D.I. 66 at pp. 25-26). Defendant maintains that the Enghouse software is just one component of the accused system, and Seagate must therefore prove the amount of the settlement attributable to Enghouse. (*Id.* at p. 25).

I do not think *Peter Culley* or *Heppler* apply. In *Peter Culley*, there was no dispute that the agreement required apportionment. 13 Cal. Rptr. 2d at 633. In *Heppler*, the court held that parties "have great freedom of action in allocating risk" and "may require negligence by the indemnitor as a condition to indemnification." 87 Cal. Rptr. 2d at 1277. The court analyzed the indemnity provision at issue and found that "indemnitor fault was a prerequisite for indemnity." *Id.* There is no language in the indemnification provision here that provides for apportionment or indicates indemnitor fault is relevant.

The court in *SoCal III* analyzed a similar indemnity provision to the one at issue here. In *SoCal II*, the Ninth Circuit remanded and instructed the district court to determine whether apportionment was required. *SoCal II*, 534 Fed. App'x at 639. There, the contract provided that "[Syntellect] shall indemnify, defend, and hold [SoCal Gas] . . . harmless from and against any and all claims, actions, suits, proceedings, losses, liabilities, penalties, damages, costs or expenses (including attorney's fees and disbursements) of any kind whatsoever arising from" a covered claim. *SoCal III*, 2014 WL 334462, at *1 (alterations in original). The district court, addressing the same argument Defendant now makes, held:

9

> The indemnity obligation at hand makes no effort to allocate damages. Instead Syntellect agreed to indemnify SoCal Gas for "any and all" damages "of any kind whatsoever" arising from infringement claims in connection with the System. As all of the damages paid arose from infringement claims for services enabled by the use of the System, Syntellect must pay them in their entirety. It is therefore irrelevant whether other components or actions by SoCal Gas were necessary for infringement or contributed to infringement.

*SoCal III*, 2014 WL 334462, at *8. The Ninth Circuit affirmed. *SoCal IV*, 593 F. App'x 732.

I agree with the reasoning in *SoCal*. The SLA requires indemnity for "any" damages "arising out of, relating to, or resulting from" infringement allegations. (D.I. 63-1 at 15). That language is broad, and gives no suggestion that the contribution of other non-Enghouse components to the infringment are relevant. I find that there is no genuine issue of material fact relating to whether apportionment is required. It is not. I will therefore grant summary judgment to Plaintiff as to Defendant's affirmative defenses of apportionment and comparative fault.

## CONCLUSION

For the reasons set forth herein, Defendant's motion is **DENIED**. Plaintiff's motion is **GRANTED**. An appropriate order will be entered.