IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SEAGATE TECHNOLOGY (US) HOLDINGS, INC., <br><br> Plaintiff; <br><br> v. <br><br> SYNTELLECT, INC., F/K/A/ APROPOS TECHNOLOGY, INC and ENGHOUSE INTERACTIVE INC., <br><br> Defendants. | Civil Action No. 12-1686-RGA |

## MEMORANDUM OPINION

Karen Jacobs, Esq., Michael J. Flynn, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Vera M. Elson, Esq. (argued), Anthony J Weibell, Esq. (argued), Wilson Sonsini Goodrich & Rosati, P.C., Palo Alto, CA; Kate P. Mahaffy, Esq., Wilson Sonsini Goodrich & Rosati, P.C., Washington, D.C., attorneys for Plaintiff Seagate Technology (US) Holdings, Inc.


Lauren E. Maguire, Esq., Ashby & Geddes, Wilmington, DE; Douglas C. Northup, Esq. (argued), Courtney R. Beller, Esq., Fennemore Craig, P.C., Phoenix, AZ; attorneys for Defendant Enghouse Interactive Inc.


September 30, 2016

*/s/ Richard G. Andrews*
ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Plaintiff Seagate Technology (US) Holdings, Inc.'s Claim for Damages and Motion for Prevailing Party Fees and Costs. (D.I. 95). The motion has been fully briefed. (D.I. 96, 102, 107). The Court heard oral argument on March 14, 2016. (D.I. 109). For the reasons stated herein, Seagate's motion is granted.

I. **BACKGROUND**

The facts of this case were set forth in the Court's opinion on the parties' cross motions for summary judgment and are therefore recounted only briefly below. (D.I. 85); *Seagate Tech. Holdings, Inc. v. Syntellect, Inc.*, 2015 WL 5568619 (D. Del. Sept. 22, 2015).

In 2004 and 2009, Seagate and Enghouse[1] entered into license agreements that gave Seagate the right to use Enghouse software that was designed to facilitate live chat services. (D.I. 63-1; D.I. 63-2). The license agreements also contained an indemnification provision pursuant to which Enghouse agreed to indemnify Seagate for "any loss, damage, expense, cost (including, but not limited to, any attorney fees incurred in the enforcement of this indemnity) or liability arising out of, relating to, or resulting from a claim alleging that the Software or the related services infringe the intellectual property of a third party." (D.I. 63-1 at 15).

---

[1] Defendant Enghouse Interactive Inc., formerly known as Syntellect, Inc., acquired Apropos Technology Inc. in 2005. For the sake of clarity, I refer to Enghouse, Syntellect, and Apropos as "Enghouse."

2

On December 11, 2012, Seagate was sued by Pragmatus Telecom, LLC for patent infringement (the "Pragmatus Litigation"). (D.I. 1). Pragmatus alleged that Seagate infringed by providing a live chat service over the internet. (*Id.* at 2–3). In February and March of 2013, Seagate requested that Enghouse defend and indemnify Seagate pursuant to their indemnification agreement. (D.I. 63-7 at 9, 11). Enghouse refused. (*Id.* at 13–14). On August 6, 2013, Seagate filed the instant breach of contract action against Enghouse (the "Enforcement Litigation"). (D.I. 23). Seagate continued to request that Enghouse defend and indemnify Seagate in the Pragmatus Litigation, to no avail. (D.I. 63-8 at 2, 4–5). In August 2014, Seagate and Pragmatus settled the Pragmatus Litigation. (D.I. 43; D.I. 63-8 at 7–20).

I granted Seagate summary judgment against Enghouse on liability on September 22, 2015. (D.I. 85). Seagate now seeks to recover: (1) contract damages flowing from Enghouse's breach of its duty to defend and indemnify Seagate in the Pragmatus Litigation; (2) prevailing party fees and costs from the Enghouse Litigation under Rule 54(d); and (3) pre- and post-judgment interest on recoverable damages, fees, and costs. (D.I. 96 at 5, 19; D.I. 107 at 28–33).

## II. ANALYSIS

### A. Pragmatus Litigation Settlement

California law leaves no room for dispute that Enghouse is liable for the $25,000 settlement Seagate paid to settle the Pragmatus Litigation. The California Civil Code creates a conclusive presumption that the settlement is recoverable. Subdivision 5 of § 2778 reads, "If, after request, the person indemnifying neglects to

defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former."

In both February and March of 2013, Seagate asked Enghouse to defend it against Pragmatus. Enghouse declined. Enghouse does not dispute Seagate's good faith in entering into the Pragmatus settlement. Accordingly, Enghouse is liable to Seagate for the $25,000 paid to settle the Pragmatus litigation.

### B. Pragmatus Litigation Attorney's Fees and Costs

Enghouse is also required to reimburse Seagate for all expenses, including attorney's fees and costs, incurred litigating against Pragmatus. This obligation is engendered by both § 2778(4) and the license agreement.

Section 2778 includes two potentially relevant provisions: subdivisions 3 and 4. Subdivision 3 provides that an indemnity agreement "embraces the costs of defense" when "incurred in good faith, and in the exercise of a reasonable discretion." Cal. Civ. Code § 2778(3). Subdivision 4, however, provides a more straightforward path to recovery for Seagate.

Subdivision 4 requires an indemnitor "to defend actions or proceedings brought against the [indemnitee] in respect to the matters embraced by the indemnity [agreement]...." § 2778(4). This duty to defend is triggered when the indemnitee tenders its request of defense to the indemnitor. *Id.*

In *Crawford v. Weather Shield Manufacturing Inc.*, the California Supreme Court made clear that subdivisions 3 and 4 impose distinct obligations on an indemnitor. 187 P.3d 424, 439 (Cal. 2008). Specifically, the court held that

4

subdivision 4 creates an independent duty to defend stemming from an indemnity agreement that is "distinct from, and broader than, the duty expressed in subdivision 3 of the statute to reimburse an indemnitee's defense costs as part of any indemnity otherwise owed." *Id.*

*Crawford* involved an indemnity agreement between J.M. Peters Co., a general contractor and the indemnitee, and Weather Shield Manufacturing Co., a subcontractor and the indemnitor. The agreement between the two parties obligated Weather Shield to indemnify J.M. Peters for liability based on Weather Shield's negligence. *Id.* at 428. A jury found that Weather Shield was not negligent and so had no duty to indemnify J.M. Peters. *Id.* at 431.

The inquiry, however, did not end there. The contract also included a provision that obligated Weather Shield to defend J.M. Peters against claims based on Weather Shield's work. *Id.* at 427. The court held that this provision, along with subdivision 4 of § 2778, imposed on Weather Shield a duty to defend J.M. Peters. *Id.* at 442. That duty was breached when Weather Shield refused to take up J.M. Peters' defense after being requested to do so. *Id.* at 428 nt. 2, 442. Accordingly, the court upheld a lower court order requiring Weather Shield to reimburse J.M. Peters for the expenses it incurred defending itself. *Id.* at 429, 442.

The indemnitor in *Crawford* had to reimburse the indemnitee because it failed to take up the indemnitee's defense after being requested to do so. So too here.

In *Crawford*, the duty to defend stemmed not only from an indemnity

agreement but also a separate agreement that the indemnitor would defend the indemnitee. Likewise, the contract between Enghouse and Seagate included both an indemnity agreement and a distinct agreement that Enghouse would defend Seagate against claims alleging infringement. (*See* D.I. 63-1 at 15) ("Supplier will defend and indemnify and hold harmless the Indemnified Parties....").

In *Crawford*, the indemnitor breached the duty to defend when it refused to take up the indemnitee's defense. Enghouse too breached its contractual duty. Seagate tendered its request to Enghouse in both February and March of 2013. Enghouse declined the request.

In *Crawford*, the indemnitor was required to reimburse the indemnitee for expenses incurred defending itself. Enghouse must reimburse Seagate $532,322.17, the actual attorney's fees and costs Seagate incurred defending itself against Pragmatus.[2]

### C. Enforcement Litigation Attorney's Fees and Costs

Seagate requests $1,719,261.00 in attorney's fees and $49,628.83 in costs from the Enforcement Litigation. (D.I. 96 at 19). The attorney's fees are based on a

---

[2] Enghouse challenges the amount as being unreasonable. (D.I. 102 at 14-18). This challenge fails. First, neither the statute nor the contract limits Enghouse's liability to "reasonable" expenses for its failure to defend after request that it do so. Second, while Seagate's attorney's fees were substantial, they were not unreasonable.
 Seagate was first faced with a settlement demand of $400,000. (D.I. 102-4 at 2). Seagate spent a relatively equivalent amount getting the settlement down to $25,000. Seagate's purported interest in settling patent litigation cheaply makes sense. Thus, while the $500,000 in attorney's fees would likely have been unreasonable had the initial demand been for $25,000, it was reasonable given the course of the litigation.
 Enghouse had not only the opportunity, but the duty, to defend Seagate. Enghouse did not. Having abandoned Seagate, it is too late to complain about how Seagate handled its own defense.

total of 2,423.6 hours. (D.I. 98-1 at 71). Seagate is seeking these damages under the license agreement and California Civil Code § 1717.

The license agreement between Seagate and Enghouse explicitly provides for attorney's fees. (*See* D.I. 63-1 at 15). In fact, the contract's language appears to contemplate Enghouse's liability for any and all costs incurred in enforcing the indemnity agreement.

The licensing agreement includes two indemnity provisions. (*Id.*). The first, 8.1, is a broad indemnity provision that covers personal injury, property damage, and the like. (*Id.*). The second, 8.2, is the provision at issue in this suit, addressed specifically to infringement claims. (*Id.*). Comparing the two provisions shows the infringement indemnity's broad scope.

The general indemnity promises to "defend and indemnify," whereas the infringement indemnity promises to "defend and indemnify and hold harmless." (*Id.*). The general indemnity covers "any claims, demands, lawsuits, damages, liability, judgments and settlements," whereas the infringement indemnity covers broader categories of costs—"any loss, damage, expense, cost... or liability...." (*Id.*). Most significantly the general indemnity covers "reasonable attorney's fees," whereas the infringement indemnity covers "any attorney's fees incurred in the enforcement of this indemnity...." (*Id.*). In sum, the infringement indemnity at issue here has broad language supporting a recovery of all fees and costs incurred by Seagate in enforcing the indemnity.

Section 1717, however, superimposes its own requirements over the

particulars of specific contract provisions. *See PLCM Grp. v. Drexler*, 997 P.2d 511, 515 (Cal. 2000) ("Under its provisions, equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (internal quotation marks omitted)); s*ee also Baldwin Builders v. Coast Plastering Corp.*, 24 Cal. Rptr. 3d 9, 10–11 (Cal. Ct. App. 2005) (granting attorney's fees under § 1717 to a party not the beneficiary of a unilateral attorney's fees contract provision). One such superimposition is § 1717's requirement that courts determine the reasonableness of attorney's fees.[3] *See PLCM*, 997 P.2d at 515 ("The history of the statute consistently adheres to the theme of equity in the award of fees and demonstrates legislative intent to expand the original ambit of the statute by the addition of provisions allowing the court to determine… the reasonableness of the fees to be awarded." (internal quotation marks omitted)); *cf. id.* (explaining that § 1717 was passed to "establish uniform treatment of fee recoveries").

Under § 1717(a), the prevailing party is entitled to reasonable attorney's fees. The statute defines the prevailing party as "the party who recovered a greater relief in that action on the contract." § 1717(b)(1). Because I granted summary judgment for Seagate, Seagate is the prevailing party and is entitled to attorney's fees.

The question then is what reasonable fees are in this case. California law employs the lodestar method. *See Ketchum v. Moses*, 17 P.3d 735, 743 (Cal. 2001)

---

[3] The text of § 1717 addresses itself to attorney's fees only and so an analysis of the reasonableness of the costs is unnecessary. Pursuant to my analysis of the contract language, I am awarding full costs to Seagate. In any event, I find the costs reasonable.

(explaining that the lodestar is the default analysis in California for prevailing party fees); *PLCM*, 997 P.2d at 518. The goal of the lodestar analysis is to "fix the fee at the fair market value for the legal services provided" and "anchor[] the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary." *Ketchum*, 17 P.3d at 743.

Creating the lodestar starts with "the time spent and [the] reasonable hourly compensation." *E.g.*, *Serrano v. Priest*, 569 P.2d 1303, 1316 n. 23, 1316 (Cal. 1977); *PLCM*, 997 P.2d at 518 ("[A] computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award."

I will start first with the rate component of calculating the lodestar. "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM*, 997 P.2d at 518. But the question is which community. Seagate argues that the relevant community is the community where counsel is located. Enghouse argues that the relevant community is here, where the case was litigated.

"The lodestar figure is calculated using the reasonable rate for comparable legal services in *the local community*...." *Nichols v. City of Taft*, 66 Cal. Rptr. 3d 680, 687 (Cal. Ct. App. 2007). The locality rule is applicable unless the prevailing party can show a reason why using local counsel was impracticable, for example, by showing that local counsel was unavailable or unable to undertake the representation. *Id.* at 687–88; *Rey v. Madera Unified School Dist.*, 138 Cal. Rptr. 3d 192, 207 (Cal. Ct. App. 2012). For example, in *Rey*, litigants in the Central Valley of

California hired attorneys from out-of-town. 138 Cal. Rptr. at 207. But the court insisted that Central Valley rates were the appropriate measure of reasonable fees because the party had failed to make the threshold showing that hiring local counsel was impracticable. *Id.*

Seagate's impracticability argument essentially is that the contract is governed by complicated California law and could have been litigated in California. (*See* D.I. 96 at 16; D.I. 109 at 24, 68–69).

The contract was not, however, litigated in California. It was litigated in Wilmington, Delaware. I also cannot say that the California legal issues were particularly complex as they centered primarily on statutory interpretation, a classic task for attorneys. Seagate has not shown that Wilmington attorneys would be unable or unwilling to handle the case. Therefore the reasonable hourly rate is the prevailing rate for a commercial litigator in the Wilmington, Delaware area.

While the occurrence of California law does not necessitate California legal rates, it does inform the reasonableness of the hours spent. As California lawyers arguing California law, the hours spent preparing for summary judgment far exceed reasonable hours. A reasonable Delaware commercial litigator, however, would have had to spend extra time preparing for a case governed wholly by California law. Thus the application of Delaware rates will account for much of the excessive hours spent on the litigation.

Even considering the case through the lens of a Delaware litigator the hours

Seagate's attorneys spent on the litigation were excessive in two ways.[4] First, the hours billed by Seagate's attorneys were top-heavy, involving a disproportionate amount of partner hours. *See Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) (cited by *Britto v. Zep Inc.*, 2015 WL 5657147, at *12 (Cal. Ct. App. 2015)). In the Enforcement Litigation, Seagate's attorneys billed 1,820.6 partner hours compared to only 402.8 associate hours. (D.I. 98-1 at 73). Accordingly, I am reducing the number of partner hours by 10%.

Second, Seagate's attorneys billed an excessive amount of time on deposition preparation and summary judgment. During the enforcement litigation, four depositions of three witnesses were conducted. (D.I. 109 at 52). Yet Seagate seeks reimbursement for 481.7 hours to prepare for and conduct those depositions. (D.I. 98-1 at 71). That is an average of about 120 hours per deposition. In my judgment, those hours are excessive. *See PLCM*, 997 P.2d at 518 ("The experienced trial judge is the best judge of the value of professional services rendered in his court....") Similarly, the amount of time spent preparing for summary judgment exceeds reasonableness. Seagate's attorneys spent over 600 hours drafting two briefs and preparing for a single argument. (D.I. 98-1 at 71). Consequently, I am reducing the number of hours awarded on the summary judgment and deposition portions of the litigation by 10%.[5]

---

[4] On the one hand, the trial court should not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." *PLCM*, 997 P.2d at 520. On the other, setting the lodestar requires determining the "hours reasonably expended." *E.g., id.* at 518.

[5] Enghouse presents its own hours billed as proof positive that Seagate's attorneys' hours are unreasonable. (D.I. 109 at 53). I find this unpersuasive. Litigation budgets are client driven and can vary based on the client's priorities. Further, Enghouse has experience litigating its liability under

"The lodestar figure may be adjusted, based on consideration of factors specific to the case...." *PLCM*, 997 P.2d at 518; *Ketchum*, 17 P.3d at 745. The figure may be adjusted up or down. *PLCM*, 997 P.2d at 518–19. The goal of this adjustment is to "fix the fee at the fair market value for the legal services provided." *Id* at 518. Factors include "the nature of the litigation, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 518–19 (quotation omitted).

Significant attention was given, and skill applied, by Seagate's attorneys, achieving a favorable outcome for Seagate. The litigation, however, related to statutory interpretation and enforcement of contractual provisions, relatively ordinary tasks for attorneys not requiring highly-specialized skills. I believe these factors balance each other out and will not apply a multiplier to the loadstar. Thus I am awarding Seagate[6] the following attorney's fees and costs:

| Description | Rate | Hours |
|---|---|---|
| Summary Judgment and Deposition Partner Hours | Prevailing Rate for a Commercial Litigator of Comparable Seniority in Delaware | 80% of Actual Billed |
| Summary Judgment and Deposition Associate Hours | | 90% of Actual Billed |
| Other Enforcement Litigation Partner Hours | | 90% of Actual Billed |
| Other Enforcement Litigation Associate Hours | | Actual Billed |
| Costs | Actual Billed | Actual Billed |

D. **Pre- and Post- Judgment Interest**

Seagate requested pre- and post- judgment interest. (D.I. 96 at 15). California

---

similar indemnity agreements. *See So. Cal. Gas Co. v. Syntellect, Inc.*, 534 F. App'x 637 (9th Cir. 2013).

[6] Seagate has diligently documented its hours and its reasons for accruing those hours. (*See* D.I. 96 at 14–16; D.I. 98; D.I. 98-1; D.I. 98-2; D.I. 98-3).

Civil Code § 3287 applies to this request. California courts favor the issuance of prejudgment interest. *See Gourley v. State Farm Mut. Auto. Ins. Co.*, 822 P.2d 374, 381 (Cal. 1991) ("It has long been settled that section 3287 should be broadly interpreted...."). The goal of § 3287 is "to provide just compensation to the injured party for loss of use of money during the prejudgment period." *Id.* Here, where the contract breached related particularly to continuing outlays of significant resources, the purposes of § 3287 are implicated.

There are two potentially relevant provisions of § 3287, subdivisions (a) and (b):

> (a) A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day....
>
> (b) Every person who is entitled under any judgment to receive damages based upon a cause of action in contract where the claim was unliquidated, may also recover interest thereon from a date prior to entry of judgment as the court may, in its discretion, fix, but in no event earlier than the date the action was filed.

As I explain, I find that the damages were ascertainable and therefore award prejudgment interest under § 3287(a). Alternatively, I would exercise my discretion under § 3287(b) to award the same prejudgment interest because the interests of the statute are served by an award here.

Pragmatus sued Seagate on December 11, 2012. (D.I. 1). On February 27, 2013, Seagate tendered a request to Enghouse for its defense in the Pragmatus litigation. (D.I. 63-7 at 9). On August 6, 2013, Seagate impleaded Enghouse to enforce the indemnity agreement. (D.I. 23).

Section 3287(a) entitles a party to prejudgment interest on "damages certain, or capable of being made certain" from the date the entitlement vested. There are three categories of damages to set prejudgment interest on: (1) the settlement, (2) any attorney's fees or costs accrued before Seagate tendered its request for defense to Enghouse, and (3) any attorney's fees and costs accrued after.

Damages are ascertainable when the obligated party has "proximate knowledge of the amount due." *Gourley*, 822 P.2d at 381 (quotation omitted). Put otherwise, damages are ascertainable if "the defendant knows the amount of damages or could calculate that amount from information reasonably available. *Collins v. City of Los Angeles*, 139 Cal. Rptr. 3d 880, 888–89 (Cal. Ct. App. 2012).

For the settlement, the amount of damages were not only ascertainable but certain on the date it was reached: September 11, 2014. (*See* D.I. 43). Because Seagate had already tendered its request for defense to Enghouse, the right to recover had also vested at that point. Prejudgment interest for the settlement amount, therefore, vested on the day of settlement.

As of February 27, 2013, Enghouse was on notice of the litigation between Seagate and Pragmatus. Enghouse has not shown that Seagate was unwilling to provide cost information and, in fact, Seagate has shown the opposite. (D.I. 98-1 at 39; D.I. 109 at 40). It is not enough that Enghouse contested its liability. *Gourley*, 822 P.2d at 381. From that date forward, the amount of liability was "reasonably available" to Enghouse.

Seagate's right to recover from Enghouse vested once Seagate became liable

14

on the attorney's fees and costs. *See* Cal. Civ. Code § 2778 ("[T]he person indemnified is entitled to recover upon becoming liable"); *cf. Trope v. Katz*, 902 P.2d 259, 263 (Cal. 1995) (explaining that becoming liable is becoming liable to pay). Under the indemnity agreement and California law Seagate had a complete right to recover those costs and fees after tendering a request for defense to Enghouse.

Accordingly, prejudgment interest attaches to any attorney's fees and costs incurred before February 27, 2013 on that date. Prejudgment interest on attorney's fees and costs incurred after February 27, 2013 runs from the date that Seagate was required to pay the fees and costs. Post-judgment interest on the settlement, fees, and costs is also granted. With this award of pre- and post- judgment interest, Seagate will be made whole, as if Enghouse had fulfilled its obligations in the first place. Interest will run at the statutorily prescribed rate of 10% per annum. Cal. Civ. Code § 3289(b).

In sum, I am awarding Seagate:

|  | Description | Rate | Hours | Prejudgment Interest |
|---|---|---|---|---|
| Pragmatus Litigation | Settlement ($25,000) | Actual | N/A | 10% from settlement date |
|  | Fees & Costs ($532,322.17) | Actual | Actual | 10% from latter of 12/27/13 or invoice due date |
| Enforcement Litigation | Summary Judgment and Deposition Partner Hours | Prevailing Rate for a Commercial Litigator of Comparable Seniority in Delaware | 80% of Actual Billed | 10% on converted fees from invoice due date |
|  | Summary Judgment and Deposition Associate Hours |  | 90% of Actual Billed | 10% on converted fees from invoice due date |
|  | Other Enforcement Litigation Partner Hours |  | 90% of Actual Billed | 10% on converted fees from invoice due date |
|  | Other Enforcement Litigation Associate Hours |  | Actual Billed | 10% on converted fees from invoice due date |
|  | Costs ($49,628.83) | Actual | Actual Billed | 10% from invoice due date |

15

Each invoice should be converted to the appropriate rate, reduced by the relevant multiplier, and then the interest applied.

### III. CONCLUSION

For the reasons stated herein, Seagate's motion is granted. The parties are directed to submit a joint form of judgment consistent with this opinion no later than October 14, 2016. A separate order consistent with this Memorandum Opinion will follow.